1

2          **IN THE UNITED STATES DISTRICT COURT**

3          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

4

5   EQUAL EMPLOYMENT                           CASE NO. CV-F-08-1478 LJO DLB
    OPPORTUNITY COMMISSION,
6                                              **ORDER ON CROSS MOTIONS FOR**
                    Plaintiff,                 **SUMMARY JUDGMENT** (Doc. 20, 22)
7          v.

8   CALIFORNIA PSYCHIATRIC
    TRANSITIONS, INC.
9
                    Defendant.
10  _____/

11         The parties have filed cross motions for summary judgment pursuant to Fed.R.Civ. P 56.

12  Plaintiff the U.S. Equal Employment Opportunity Commission ("EEOC") moves for summary

13  adjudication on certain of defendant's affirmative defenses. Defendant California Psychiatric

14  Transitions, Inc. ("CPT') moves for summary judgment on plaintiff's retaliation claim. Each party filed

15  an opposition to the opposing party's cross motion and also filed reply briefs. Pursuant to Local Rule

16  230(g), these motions were submitted on the pleadings without oral argument, and the hearing set for

17  July 14, 2010 was VACATED.  Having considered the moving, opposition and reply papers, as well as

18  the Court's file, the Court issues the following order.

19                          **FACTUAL BACKGROUND**

20  **A.     Overview**

21         Plaintiff EEOC, the federal agency charged with enforcing Title VII of the Civil Rights Act of

22  1964, as amended ("Title VII"), brought this action on behalf of Charging Party Audel Mendoza

23  ("Mendoza").  The EEOC alleges that Mendoza was fired from his position as a mental health worker

24  at CPT in retaliation both for his association with Mariel Somera ("Somera"), a woman who had

25  complained of, and brought a sexual harassment charge against CPT, and because Mendoza engaged in

26  participation activity.  Mendoza's participation in Somera's charge against CPT is the central issue in

27  CPT's motion.

28         Defendant CPT operates a mental health rehabilitation facility in Delhi, California. (Doc. 22,

                                      1

CPT P&A p.1.)  CPT's president and Medical Director is John T. Hackett, M.D. and the facilities director is James T. Drayton.  CPT hired Mendoza in 2002 to counsel residents on activities of daily living, daily charting and reporting, monitoring behavioral changes among other duties.  (Doc. 22, CPT P&A p. 2.)

**B.      The Somera Charge**

In 2003, Mariel Somera was hired by CPT as a dietary aide to assist in the kitchen.  (Doc. 22 CPT P&A p.2.)  She became friends with Mendoza, and they socialized with each other both inside and outside of the workplace.[1]  In December 2003, Somera resigned her position at CPT and filed an EEOC complaint regarding a claim of sexual harassment by her supervisor Larry Fuentes.  On September 14, 2004, and on October 14, 2004, EEOC served CPT with a Notice of Charge of Discrimination on behalf of Somera alleging that Somera was sexually harassed by Manager Larry Fuentes.  ("Somera Charge") (Doc. 22 CPT P&A p. 3; Doc. 24 EEOC Response fact 11-12.)

In early Spring 2005, the EEOC's investigation into the Somera charge became more active.  On March 28, 2005, the EEOC mailed CPT Director, James Drayton, a Request for Information and on April 23, 2005, investigator Malinda Tuazon held a teleconference with Drayton to arrange to come on-site and interview witnesses.  In its investigation, Mendoza was not identified as a witness either by Somera or by CPT.   (Doc. 24, EEOC Response facts 13-16.) In connection with her Charge, Somera provided information to the EEOC in a Questionnaire, which did not list Mendoza as a potential witness.  CPT, in its response to the EEOC request for information, did not identify Mendoza as a potential witness.  At around the time EEOC began requesting information from CPT,  Supervisor Latrice Wills commented to Mendoza that she heard "he still talked" to Somera.  Mendoza confirmed he still talked to Somera.  A few weeks later, on April 27, 2005, and a few days after the EEOC investigator spoke with the Drayton about conducting an on-site visit, CPT fired Mendoza.

**C.      Mendoza's Charge of Retaliation**

Mendoza filed a charge of discrimination with the EEOC. In June 2005, the EEOC served notice to CPT that Mendoza had filed a Charge of Discrimination claiming retaliation in violation of Title VII.

---

[1]Mendoza and Somera ultimately married in 2008.

2

1    The Charge stated as follows:

2           "I was hired by Respondent in September 2002. My position title was
            Mental Heath Worker. On September 14, 2004, a coworker filed a charge
3           of discrimination against Respondent. (EEOC charge no.
            370-2005-01635). **I have provided information to the EEOC in**
4           **conjunction with that charge**. In early April 2005, Latrice Wills,
            Supervisor, made the comment, "I hear you still talk to Missy across the
5           street," in reference to my former coworker who filed the above
            mentioned charge. On April 28, 2005, I was discharged.

6           "Respondent did not state a reason for its actions.
7
            "**I believe I have been retaliated against for engaging in protected**
8           **activity**."  (Doc. 25, CPT P&A p. 3)(emphasis added).

9

10          CPT contends that Mendoza was an at will employee who was terminated because Mendoza had

11   disclosed confidential patient information.  (Doc. 22, CPT P&A p. 6.)  CPT contends the events stated

12   in the charge, in the highlighted portion above, never occurred.

13                              **ANALYSIS AND DISCUSSION**

14   **A.     Summary Judgment/Adjudication Standards**

15          F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on

16   all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no genuine

17   issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.

18   F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

19   1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

20   The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order

21   to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct.

22   1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

23          On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to

24   any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56

25   ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H.*

26   *Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S.

27   464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313

28   (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and

                                              3

all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### DEFENDANT CPT'S MOTION FOR SUMMARY JUDGMENT ON THE RETALIATION CLAIM

The EEOC's complaint alleges one cause of action on behalf of Mendoza for retaliation in violation of Title VII.  The complaint alleges:

> "7. On or about April 27, 2005, Defendant engaged in the unlawful practice of retaliation at its Merced County facility, in violation of Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a), by discharging Charging Party for engaging in protected activity, including for his association with and support of a co-worker who had complained about unlawful sexual harassment."  (Doc. 1, Complaint.)

**A.  Overview of Parties' Arguments**

CPT moves for summary judgment on the grounds that there is no evidence to support the EEOC allegations of retaliation.   The EEOC's allegation of "assistance" and "support" are unfounded because either (1) the assistance or support did not exist, or (2) there is no causal nexus between the protected conduct and the adverse employment action.  Defendant CPT argues that there is no evidence that Mendoza either participated in the enforcement of another charge or opposed any conduct made unlawful by its terms and there is no evidence that CPT had actual knowledge of Mendoza's alleged participation.  "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in protected activity."  *Cohen v. Fred Meyer. Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  CPT argues that the EEOC's response to interrogatories does not demonstrate that Mendoza engaged in protected conduct under Title VII.  (Doc. 22, CPT P&A p. 10.)  The interrogatory offered the following evidence:

1.    Mendoza friendship with Somera was known to Drayton.

2.    On August 26, 2004, Somera filed a charge of discrimination.

3.    Somera identified charging party Mendoza as a witness.

4.      On March 28, 2005, Drayton was mailed a request for information.

5.      On April 23, 2005, EEOC investigator Tuazon telephoned Drayton.

6.      Latrice Wills confirmed with Mendoza that he still talk to CP Somera.

7.      Somera quit CPT's employ in December 2003.

8.      On April 28, 2005, fired Mendoza.

CPT argues that Mendoza concedes that he did not have any contact with the EEOC until May 2005 - after his termination in April 2005 - had not spoken with anyone at CPT regarding Somera's claim and had no reason to believe that Drayton was aware he was supporting Somera. (Doc. 22, CPT P&A p. 12.)

The EEOC argues that its suit is based on two alternative theories; CPT fired Somera's then-boyfriend, Mendoza, to punish her for complaining about sexual harassment, or alternatively, that CPT anticipated Mendoza would assist Somera in her sexual harassment against CPT in the future.  (Doc. 24, EEOC Opposition p.1.)  The EEOC argues that the *prima facie* case is met for preemptive retaliation. There is sufficient evidence that Drayton anticipated that Mendoza might engage in protected activity. James Drayton, CPT's Facility Director, who made the decision to fire Mendoza, was aware of the relationship between Mendoza and Somera.  He confirmed that Mendoza was still seeing Somera, while her EEOC claim was pending, and he was fired Mendoza just weeks later.  This evidence is sufficient for the jury to conclude that Drayton fired Mendoza because he anticipated that Mendoza may engage in protected activity in connection with Somera's sexual harassment claim. Title VII prohibits retaliatory acts because an employers fear that an employee might engage in protected conduct.

/////

/////

/////

/////

**B.      *Prima Facie* Case Of Retaliation**

Retaliation claims brought pursuant to Title VII are governed by a the *McDonnell Douglas*[2] burden-shifting framework. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild*

---

[2]      *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

*Industries, Inc.*, 797 F.2d 727, 730-731 (9th Cir. 1986) (order and allocation of proof for retaliation claims follow familiar scheme announced in *McDonnell Douglas*).   "At the first step of *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination or retaliation." *Metoyer*, 504 F.3d at 931, n.6.   If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for adverse employment action.  *McDonnell Douglas Corp.,* 411 U.S. at 802.  If the employer carries its burden, plaintiff must have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804.

Here, defendant CPT challenges whether the EEOC establishes a *prima facie* case of retaliation. Therefore, it is unnecessary to consider the remaining two steps of the *McDonnell Douglas* burden-shifting framework.

To make out a retaliation *prima facie* case, a plaintiff must demonstrate that:

1.    He/she engaged in protected activity;

2.    He/she suffered an adverse employment action; and

3.    There was a causal link between his/her activity and the employment decision.

*Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003).

**1.    Engaged in Protected Activity -  Element of the *Prima Facie* Case**

Title VII forbids any employer from discriminating against any employee because he has participated in any manner in a Title VII investigation.  The relevant language of the Civil Rights statute provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because *he has made a charge, testified, assisted, or participated in any manner in an investigation*, proceeding, or hearing under this subchapter.

Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a) (emphasis added).

Section § 2000e-3(a) has two separate clauses: an opposition clause, as well as an independent participation clause.  The "participation" clause is interpreted broadly. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2nd Cir. 2005) (Congress intended exceptionally broad protection and expansive

meaning to the terms "any participation"). The anti-retaliation provision 42 U.S.C. § 2000e-3(a) is meant to prevent harm to employees who report discriminatory employment practices or assist in the investigation of these practices. *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn*., -- U.S. --, 129 S.Ct. 846, 852, 172 L.Ed.2d 650 (2009); *Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989) (husband's participation in wife's EEOC proceeding was protected activity even though husband had not filed his own charge); *EEOC v. Nalbandian Sales, Inc.*, 36 F.Supp.2d 1206, 1213 (E.D. Cal. 1998) (Wanger, J.) (the court permitted suit on plaintiff's claim that he was not rehired because his sister had filed EEOC charges against the employer). The purpose of the anti-retaliation clause is to "[maintain] unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-46, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Under the participation clause, even a visit with the EEO counselor constituted participation "in the machinery set up by Title VII." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997), *cert. denied,* 523 U.S. 112 (1998).  The participation clause includes those whom the employer has reason to believe is assisting the employee in protected activity. *Wilken v. Cascadia Behavioral Health Care, Inc.,* 2007 WL 2916482, 27 (D.Or. 2007) (Employer had every reason to believe co-workers and roommates were jointly and assisting each other).

Some courts disagree as to whether Title VII prohibits retaliation against an employee because of the protected activities of other persons. *Compare Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368 (5th Cir. 2008) (spouse who did not provide information about FMLA claim and did not testify about FMLA not protected by FMLA and retaliation claim dismissed); *Fogleman v. Mercy Hosp.*, *Inc.*, 283 F.3d 561 (3d Cir. 2002) (retaliation provisions of ADA and ADEA did not protect son of employee who filed suit against employer), *cert. denied,* 537 U.S. 824 (2002); *Freeman v. Barnhart*, 2008 WL 744827 (N.D.Cal. 2008) (only employees that have personally engaged in statutorily protected activity may bring retaliation claims).

/////

CPT argues that Mendoza concedes that he did not have contact with the EEOC until after May 2005-after his termination in April 2005.  Therefore, CPT argues Mendoza was not engaged in a protected activity and it is not reasonable for a jury to conclude that he was terminated for in retaliation. CPT argues that "associational" retaliation claims, (claims based solely upon a relationship with a

charging party) are not cognizable under Title VII.  (Doc. 28, Reply p.2-3.)

The EEOC has come forward with evidence which if believed establishes that Mendoza engaged in "participation."  Mendoza participated in the filing and helped Somera complete her EEOC complaint.  The interrogatory response, which CPT alleges is factually devoid, identifies that Mendoza was a witness to the Somera events.  In addition, as CPT acknowledges, the EEOC investigator "received from Somera a list of names including Mendoza."  (Doc. 22, CPT P&A p.10.)  Whether Mendoza engaged in protected activity and the extent of participation are factual issues.  There is evidence from which a reasonable trier of fact could conclude the Mendoza participated "in the machinery set up by Title VII."

Further, there is an inference that the employer knew that Mendoza was or may assist Somera in her Charge.  Upon formal notice of investigation of the Somera Charge, Mendoza's supervisor asked if Mendoza still spoke to Somera.  There is evidence that it was known Mendoza and Somera were romantically linked.  Mendoza responded affirmatively, and shortly thereafter, he was terminated.  The participation clause includes those whom the employer has reason to believe is assisting the employee in protected activity.

Contrary to CPT's argument, the EEOC has not relied solely upon Mendoza's "associational" relationship with Somera.  The EEOC has raised issues of fact as to the protected activity Mendoza engaged in in conjunction with the Somera Charge.  Accordingly, the EEOC has carried its burden on this element.

### 2.    Adverse Employment Action - Element of the *Prima Facie* Case

CPT does not challenge this element of the prima facie case.  There is not a dispute that Mendoza suffered an adverse employment action.  He was terminated from his employment at CPT.

### 3.    Causal Connection - Element of the *Prima Facie* Case

"To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made."  *Kraus v. Presidio Trust Facilities Division/Residential Management Branch*, __ F.Supp.2d __, 2010 WL 1293788 (N.D. Cal. 2010) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)).  "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge

that the [plaintiff] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)), *cert. denied,* 488 U.S. 1006 (1989). An employer's generalized concern that an employee might complain or assist in another's complaint about discrimination is sufficient to meet the prima facie element. *Sauer v. Salt Lake City,* 1 F.3d 1122, 1128 (10th Cir. 1993); *Creighton v. City of Livingston,* 2009 WL 3246825 (E.D. Cal. 2009) (Wanger, J.) (preemptive termination to head off a complaint was actionable under Cal. Labor Code, which was fashioned after federal statutes.)

Here, CPT relies upon the purported inadequacy of the interrogatory response as the basis for the motion. The interrogatory, however, identifies circumstantial evidence of potentially retaliatory conduct. The decision maker, Drayton, had knowledge of the personal relationship between Mendoza and Somera. The interrogatory identifies that Mendoza was identified as a witness and Mendoza was fired shortly after notice to Drayton of the Somera Charge. The timing of adverse employment action can provide strong evidence of retaliation. *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1069 (9th Cir. 2003); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (causation was found from proximity alone where the adverse actions occurred within three months after protected activity, two weeks after charge investigated, and less than two months after investigation ended); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir.1989) (causation established when terminations occurred forty-two and fifty-nine days after EEOC hearings)*, cert. denied,* 494 U.S. 1056 (1990). The record indicates there is evidence suggesting CPT could have terminated Mendoza because of a fear that he would engage in protected activity. Drayton had Mendoza fired immediately after learning of the Somera Charge, and, at that time, Drayton was aware that Mendoza was friendly with Somera. This pattern of events could raise a reasonable inference that Mendoza's termination was driven by fear that he would assist in the complaint by Somera. Accordingly, there is evidence from which a reasonable trier of fact could find that plaintiff meets this *prima facie* element.

CPT argues that Mendoza's status as a witness was never disclosed to CPT, including to Drayton, prior to Mendoza's termination. The extent of CPT's knowledge of Mendoza as a potential witness, however, is a question of fact. The "participation" clause certainly does not require formal

10

notification that Mendoza was a witness.  Here, the evidence shows that it was common knowledge that Mendoza and Somera were in a relationship.  After Drayton was informed of Somera's complaint, Mendoza's supervisor questioned Mendoza about it to some extent.  ("Do you still talk to Missy across the street.")  Mendoza was fired shortly thereafter.

CPT argues that there is no casual connection because it did not have actual knowledge of any protected activity.  It argues that actual knowledge of the protected activity is an essential part of a retaliation claim, citing *Yartzoff v. Thomas*, 808 F.2d 1372, 1376 (9th Cir. 1987).  In its reply, CPT argues that proximity in time is insufficient to establish causal connection.  (Doc. 28, Reply p.9-10.)   CPT argues that it is not sufficient that the defendant could or should have known of the protected activity; the defendant must have actual knowledge.  (Doc.22, CPT Moving Papers p. 15.)

*Yartzoff* does not stand for that proposition.  The Court in *Yartzoff* held that causation may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1376.  The other case cited by CPT, *Frazier v. UPS*, 2005 WL 1335245 (E.D. Cal. 2005), states that complaints "cannot be viewed in a vacuum."  Indeed, whether CPT had actual knowledge is an issue of fact.  As stated above, the EEOC has presented circumstantial evidence upon which a reasonable jury could believe that CPT had knowledge that Mendoza would provide assistance to Somera in her sexual harassment charge.[3]  Accordingly, the EEOC has raised issues of fact as to the *prima facie* claim of retaliation.

### EEOC's MOTION FOR SUMMARY JUDGMENT

The EEOC moves for summary adjudication on the following issues:

(1) The EEOC has satisfied its conditions precedent to bringing suit,

(2) Defendant's third affirmative defense for collateral estoppel,

(3) Defendant's fourth affirmative defense for exhaustion of administrative remedies,

(4) Defendant's seventh affirmative defense for California Labor Code §2911,

(5) Defendant's twelfth affirmative defense for unclean hands,

---

[3] The other decision cited by CPT is an unpublished decision, *Gomez v. United States Postal Serv.*, 32 Fed. Appx. 889, 892 (9th Cir. 2002).  See FRAP 32.1.

1              (6) Defendant's thirteenth affirmative defense for waiver, and

2              (7) Defendant's eighteenth affirmative defense for laches.

**A.      Conditions Precedent to Suit by the EEOC**

The EEOC is required to fulfill certain basic requirements for administrative procedures under Title VII prior to filing suit.  The EEOC must (1) receive a timely charge of unlawful employment practice and provide notice to the employer thereof; (2) conduct an investigation; (3) determine that reasonable cause exists to believe that discrimination has occurred; and (4) attempt to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 607 (9th Cir.1982); 42 U.S.C. § 2000e-5.  Thus, the basic requirements that must be met include a timely and valid charge, an investigation, a finding of cause, and an attempt at conciliation.

**1.      The Charge as a Condition Precedent**

Before a potential plaintiff may sue for discrimination under Title VII, the plaintiff must first exhaust his or her administrative remedies.  *Sommatino v. U.S.*, 255 F.3d 704 (9th Cir. 2001) (verbal statements and email do not comply with the administrative claim requirements).  "A private plaintiff must first file an EEOC complaint against the allegedly discriminatory party before bringing a Title VII suit in federal court.  *Stache v. Int'l Union of Bricklayers and Allied Craftsmen*, *AFL-CIO*, 852 F.2d 1231, 1233 (9th Cir.1988), *cert. denied,* 493 U.S. 815 (1989).  An employment discrimination charge is to be construed liberally and an employee need not make allegations with legal precision. *Sommatino v. U.S.*, 255 F.3d at 710.

The EEOC presents evidence hat it has met this condition precedent.  It is undisputed that Mendoza filed a charge within 300 days of his termination.  (Doc. 25, CPT Response fact 1.)  It is undisputed that CPT received notice of the charge.  (Doc. 25, CPT Response fact 2.)  Thus, it is undisputed that a charge of discrimination was filed against CPT and that the EEOC provided notice to CPT of the charge of discrimination.

CPT argues that "[w]hile it remains undisputed that a charge of discrimination was filed and that the EEOC sent it to CPT, the charge itself contained, at least in part, allegations that were known to be factually unsupportable at the time." (Doc. 25, Opposition p.6.) CPT argues that the Mendoza Charge

1    contained false information which was known to the EEOC.  CPT argues that the EEOC drafted the

2    Mendoza Charge knowing that Mendoza had not affirmatively assisted the EEOC in the Somera Charge

3    until after Mendoza had been terminated.  Thus, CPT argues the EEOC presented a Charge which

4    contained "at best irrelevant and misleading" charge of retaliation.  (Dco. 25, CPT P&A p.7.)

5        CPT's position is that the EEOC should not have received the charge. CPT has not cited any

6    authority for the proposition that in receiving information for a potential charge, the EEOC must

7    investigate the information, **prior to**, receiving it. See 29 C.F.R. § 1601.20 ("The Commission shall

8    receive information concerning alleged violations of title VII, the ADA, or GINA from any person.

9    Where the information discloses that a person is entitled to file a charge with the Commission, the

10   appropriate office shall render assistance in the filing of a charge.")  A charge must be in writing and

11   under oath or affirmation. 42 U.S.C.A. § 2000e-5(b). The charge is necessary to initiate the

12   administrative process. *Casavantes v. California State Univ., Sacramento*, 732 F.2d 1441 (9th Cir. 1984)

13   (intake questionnaire sufficient to begin the process), *abrogated by See Fed. Express Corp. v.*

14   *Holowecki*, -- U.S. --, 128 S.Ct. 1147, 1154-59, 170 L.Ed.2d 10 (2008) (discussing approach to be used

15   in determining whether intake questionnaire constitutes "a charge").  There is no authority that the

16   EEOC must, first, investigate a potential charge **before** it accepts the claim as a charge.

17       The EEOC has been given broad authority not just to respond to individual instances of

18   discrimination, but to investigate discrimination independently in an effort to eradicate it from the

19   economy. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 296 n. 11, 122 S.Ct. 754, 151 L.Ed.2d 755

20   (2002) (noting that "[w]e have generally been reluctant to approve rules that may jeopardize the EEOC's

21   ability to investigate and select cases from a broad sample of claims" because "it is crucial that the

22   Commission's ability to investigate charges of systemic discrimination not be impaired"). Title VII does

23   not impose a "pre-investigation" investigation on the EEOC.  Indeed, Title VII requires an investigation

24   after a charge is received, and provides a mechanism for dismissal of an unfounded charge.  42 U.S.C.

25   §2000e-5(b) ("If the Commission determines after such investigation that there is not reasonable cause

26   to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to

27   be aggrieved").  Title VII does not impose "pre-investigation" as a condition for receiving a charge.

28       **2.      The Investigation as a Condition Precedent**

1   The second condition precedent to the EEOC filing suit in federal court is that the EEOC must

2   conduct an investigation of the charge. *EEOC v. Pierce Packing Co.*, 669 F.2d at 607.  After a charge

3   is filed, The EEOC next must notify the alleged wrongdoer of the charge, conduct an investigation, and

4   determine whether reasonable cause exists to believe that the charge is true. *Id.*

5   CPT argues that the EEOC did not conduct an adequate investigation prior to filing suit.   (Doc.

6   25, Opposition p.6.)  CPT argues that the EEOC did not conduct a genuine investigation into the

7   Mendoza's charge. CPT argues that at the time the charge was sent to CPT, there was no evidence that

8   Mendoza had participated or assisted in another EEOC charge.  There was no evidence that Mendoza

9   had provided information to the EEOC on Somera's Charge and thereafter terminated for it.  CPT argues

10   that the EEOC did not investigate CPT's reason for terminating Mendoza - disclosure of confidential

11   patient information.  Investigator Tuazon did not conduct any witness interviews and did not contact the

12   Department of Mental Health.  (Doc. 25, Opposition p.9.)  CPT argues that because the EEOC did not

13   conduct a genuine investigation, it did not satisfy a condition precedent to filing suit.

14   The EEOC points out that there are no judicial "standards" to evaluate whether an EEOC's

15   investigation has satisfied its condition precedent.  EEOC argues that it conducted "some" investigation

16   and cites communications between investigator Tuazon and Mendoza, the EEOC's Request for

17   Information from CPT and letters from Drayton and CPT's Counsel.  It argues that "some" investigation

18   is all that is needed to satisfy its condition precedent.

19   Federal courts generally accord deference to an agency's administrative decisions, rule-making,

20   and operating procedures, as well as to their interpretations of their governing statute. *See Chem. Mfrs.*

21   *Ass'n v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102 (1985) (an agency charged

22   with administering a "complex statute" is entitled to considerable deference and the court is precluded

23   from substituting its judgment for that of the agency if the agency action was sufficiently rational);

24   *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985)

25   ("[a]n agency's construction of a statute it is charged with enforcing is entitled to deference if it is

26   reasonable and not in conflict with the expressed intent of Congress").  In addition, deference to the

27   EEOC's determinations is consistent with the Administrative Procedures Act which provides that an

28   agency's actions, findings, and conclusions should be set aside if found to be "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

The Ninth Circuit has not directly addressed the issue of whether adequacy of the EEOC investigation may be challenged in subsequent litigation.  Several other courts have concluded that the adequacy of the EEOC investigation may not be challenged.  The Court in *E.E.O.C. v. Gold River Operating Corp.*, 2007 WL 983853, 3 (D.Nev. 2007) concluded that "an employer may not litigate the adequacy of the EEOC's investigation and determination" and citing to various other circuits.  Other courts that have considered the subject are in agreement that an employer may not litigate the adequacy of the EEOC's investigation or determination. *See e.g.*, *EEOC v. Walner & Assocs.*, 91 F.3d 963, 968 n. 3 (7th Cir.1996) ("This determination of reasonable cause is only an administrative prerequisite to a court action and has no legally binding significance in subsequent litigation.") (citation omitted); *EEOC v. St. Anne's Hosp.*, 664 F.2d 128, 131 (7th Cir.1981) ("A reasonable cause determination is not to adjudicate a claim but to notify an employer of the Commission's findings."); *EEOC v. Chicago Miniature Lamp Works*, 526 F.Supp. 974, 975 (N.D.Ill.1981) ("no pre-merits judicial inquiry into the basis for EEOC's investigation findings is proper in the ensuing Title VII action."); *EEOC v. KECO Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir.1984) ("It was error for the district court to inquire into the sufficiency of the Commission's investigation.").

In particular, in  *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984), the court held it was error for the district court to consider the EEOC's investigation.  The EEOC had found reasonable cause on a charge of sex discrimination. *Id.* at 1098.  The district court granted defendant's summary judgment on the grounds that the EEOC did not have grounds to find cause. *Id.* at 1099. On appeal, the Sixth Circuit reversed the district court finding the court erred in evaluating the sufficiency of the investigation. *Id.* at 1100. The appellate decision was largely grounded in the public policy concern that this "line of inquiry would deflect the efforts of both the court and the parties from the main purpose of this litigation: to determine whether (the defendant) has actually violated Title VII." *Id.*

The nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of EEOC.  In *U.S. E.E.O.C. v. NCL America, Inc.*, 536 F.Supp.2d 1216, 1222 (D.Hawaii 2008), the Court stated that an EEOC investigation--although a condition precedent to the EEOC's bringing of a lawsuit--simply requires that <u>some</u> investigation be made, and that challenges to the

adequacy of the investigation are subject to a deferential standard of review. Similarly, in *E.E.O.C. v. Nestle Co.,* 1982 WL 234, 1 (E.D. Cal. 1982) (Karlton, J.), the Court denied a motion for summary judgment that the EEOC failed to investigate.  A charge of company-wide sex discrimination was filed with the EEOC. The court found that the "EEOC undertook a reasonable investigation of that charge." The EEOC discovered, inter alia, that the defendant employed no women at all in salaried, "white-collar" positions at its Ripon facility. The EEOC, relying on its expertise in these matters, concluded that it had sufficient data upon which to base a determination that defendant had engaged in sex discrimination in regard to these positions. The EEOC so informed the defendant, and offered it an opportunity to meet and either convince the EEOC that its findings were improper, or to work out a voluntary compliance scheme- i.e., to engaged in "conciliation." Thus, courts give deference to the EEOC administrative decisions.

Applying a deferential standard of review to the EEOC's investigative efforts, there is evidence to support a finding that the EEOC satisfied the statutory condition precedent of an "investigation." Here, EEOC conducted some form of investigation.  It interviewed the charging party, Mendoza (See Doc. 25, CPT Response to Facts 6), collected documents from CPT, ascertained CPT's position on the Mendoza charge, and obtained a statement from James Drayton (See Doc. 25, CPT Response to Facts 6).  Further, the EEOC was not entirely acting within a vacuum because the EEOC was involved with and had investigated two previously filed and related charges by former employees, Somera and Soares. (Doc. 25, CPT Response to Facts 6; Doc. 24 CPT Facts 8, 9, 14.) Thus, given the deference the Court must exhibit to the administrative agency's discretion, and the investigation conducted by the EEOC, the investigation was not an abuse of discretion or arbitrary and capricious.

CPT argues that the EEOC should have done more. It argues that a "genuine" investigation should have taken place and that the investigation at issue here was entirely lacking.  CPT argues that the EEOC should have interviewed additional witnesses, such as Latrice Wills, John Hacket, Larry Fuentes, a representative of the California Department of Mental Health, to verify the charge and CPT's claims of legitimate termination of Mendoza.

Whether the EEOC could or should do more is within the discretion of the EEOC.

**3.      Reasonable Cause and Conciliation Efforts as Conditions Precedent**

1    CPT does not argue that the EEOC failed to satisfy the third condition; it was notified of the

2    finding of reasonable cause.  The EEOC issued its Letter of Determination finding that there was

3    reasonable cause to believe that CPT had retaliated against Mendoza. (Doc. 25, CPT Statement of Facts

4    fact 7 ("Not disputed that the EEOC issued the Letter of Determination.")

5    CPT argues that the EEOC's conciliation efforts were patently unreasonable.  CPT argues that

6    there was no evidence to support the charge.  CPT argues that the EEOC changed the basis for the Notice

7    of Determination and then gave CPT only a few days to respond to the new Letter of Determination

8    ("LOD").[4]  CPT argues that the EEOC artificially constrained conciliation efforts because the EEOC

9    gave CPT minimal time to respond to the September 15 Amended LOD.

10    If the EEOC determines after investigation that there is reasonable cause to believe a charge is

11    true, the Commission must "endeavor to eliminate any such alleged unlawful employment practice by

12    informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b).  During this

13    conciliation stage, the EEOC does not act as a neutral mediator between the Charging Party (the

14    complaining employee) and the Respondent (the employer), but rather pursues its own agenda: to

15    "eliminate the alleged unlawful employment practice." *See E.E.O.C. v. Champion Chevrolet*, 2009 WL

16    2835101 (D.Nev.2009); *EEOC v. Hometown Buffet, Inc.*, 481 F.Supp.2d 1110, 1114-15 (S.D.Cal.2007)

17    Courts have generally rejected efforts to challenge conciliation, concluding that the issue is only

18    whether EEOC attempted conciliation, not how hard it actually tried to obtain settlement. *See E.E.O.C.*

19    *v. Costco Companies, Inc.*, 2000 WL 33116546 (S.D. Cal. 2000).   While it is a jurisdictional

20    requirement to filing suit, the law requires no more than a good faith attempt at conciliation by the

21    EEOC; in doing so, the EEOC must outline the basis for its determination of discrimination, offer an

22    opportunity for voluntary compliance, and respond flexibly to the reasonable attitudes of the employer.

23    *E.E.O.C. v. Lockheed Martin Global Telecommunications, Inc.*, 514 F.Supp. 2d 797 (D. Md. 2007);

24

25    [4] The EEOC issued a Letter of Determination on August 2007 and then vacated that determination and issued an

26    Amended Letter of Determination on September 15, 2008.  (Doc. 25, CPT Response fact 7; Doc. 25, CPT Response fact 18.)
The initial LOD stated in pertinent part: "The evidence demonstrates that there is a casual connection between Charging
Party's association with an individual who engaged in protected activity and his termination. The evidence further [sic] that

27    the reason asserted by Respondent for Charging Party's termination is pretextual."  The Amended LOD deleted this language,
and substituted, "Based on the evidence of record, there is reasonable cause to believe that Respondent retaliated against

28    Charging Party in violation of the statute."

1   *E.E.O.C. v. California Psychiatric Transitions, Inc.*, 644 F.Supp. 2d 1249 (E.D. Cal. 2009) (Wanger,

2   J.)(EEOC letters notifying former employer that it found reasonable cause to believe that female

3   employees and similarly situated employees were subjected to sexual harassment and inviting employer

4   to conciliate all claims against it was sufficient to satisfy EEOC's obligation to attempt conciliation of

5   similarly situated employee's hostile work environment claims before bringing suit); *E.E.O.C. v.*

6   *Hometown Buffet, Inc.*, 481 F.Supp.2d 1110 (S.D. Cal. 2007) (EEOC discharged its statutory obligation

7   to conciliate prior to filing action against employer under Title VII; though EEOC could have done more

8   to facilitate conciliation)

9   A district court's dissatisfaction with an EEOC conciliation attempt "is not the appropriate

10  standard of review. The district court should only determine whether the EEOC made an attempt at

11  conciliation. The form and substance of those conciliations is within the discretion of the EEOC as the

12  agency created to administer and enforce our employment discrimination laws and is beyond judicial

13  review." *E.E.O.C. v. California Psychiatric Transitions, Inc.*, 644 F.Supp.2d 1249, 1273 (E.D.Cal.2009)

14  (Wanger, J.).

15  CPT argues that the conciliation efforts were faulty because the EEOC failed to support its LOD

16  or the Amended LOD with reference to specific evidence to support the charge. The conciliation

17  requirement, however, does not necessitate that the EEOC disclose all of the underlying evidence or

18  information to the employer. *See E.E.O.C. v. Hibbing Taconite Co.,* 266 F.R.D. 260, 274 (D.Minn.

19  2009) and *E.E.O.C. v. Champion Chevrolet*, 2009 WL 2835101 at *7 (D.Nev. 2009) (the EEOC had

20  conciliated in good faith where the employer had received adequate explanation for the reasonable cause

21  finding and settlement proposal, and that "[t]he EEOC's failure to disclose the identities of potential

22  witnesses should not have affected [the employer's] ability to consider the demand").

23  Here, the EEOC provided CPT with sufficient information to ensure that CPT knew the basis

24  of the charge, and was able to participate in the conciliation process fully. Indeed, the Mendoza Charge

25  stemmed from the Somera Charge, for which the EEOC and CPT were in active litigation when the

26  LODs were sent to CPT. After the first LOD in August 2007, the EEOC requested conciliation. (Doc.

27  25, CPT Response fact 8.) CPT responded with objections, among other things, to the LOD and asked

28  for information regarding mitigation and damages. (Doc. 25, CPT Response fact 11.) CPT also offered

to agree to workplace discrimination training and dissemination of material to the workforce.  In September 2007, the EEOC responded with the information requested and set a date for CPT's response. (Doc. 25, CPT Response fact 12.)  In October 2007, when CPT responded, it offered to reinstate Mendoza and settle for $5,000.  (Doc. 25, CPT Response fact 14.)  The EEOC countered with an $60,000 offer, comprised of both back pay and emotional distress damages.  (Doc. 25, CPT Response fact 15.)  In January 2008, CPT responded with an objection to the amount requested in settlement and requested objective verification of the emotional distress damages, among other things.  (Doc. 25, CPT Response fact 16.) In April 2008, with the parties $50,000 apart and eight months into the conciliation efforts, the EEOC sent a letter indicating that conciliation was futile and non productive.  (Doc. 25, CPT Response fact 17.)

An Amended LOD in September 2008 was sent to CPT.  At that time, CPT and the EEOC were involved in litigation regarding the Somera Charge and the parties were in depositions together.  The Amended LOD requested a quick return around response of one day.  CPT did not respond within the allotted time but responded on September 29, 2008, a few days later, with an offer of $7,500 in settlement of the Mendoza Charge.  By that time, the EEOC had referred the matter to litigation and this action was commenced on September 30, 2008.

Applying a deferential standard of review to the EEOC's conciliation efforts, there is evidence that the EEOC satisfied the statutory condition precedent of conciliation.  The EEOC engaged in a several months conciliation effort and was unsuccessful.  It offered settlement opportunities, responded to CPT's extension requests and to CPT's requests for information to substantiate the damages.

CPT argues that EEOC failed to provide conciliation because the EEOC vacated the initial LOD with the Amended LOD, and demanded an immediate response to its amended determination.  (Doc. 25, CPT P&A p. 10.)  CPT argues this is not good faith conciliation efforts.  CPT cites *E.E.O.C. v. Pacific Maritime Ass'n*, 188 F.R.D. 379, 381 (D.Or. 1999) for the proposition that the court must make an inquiry into whether "the EEOC had made satisfactory and good faith efforts in the conciliation process."

Here, the underlying charge and the basis for the charge did not change in the Amended LOD. The Mendoza Charge remained the same that he had been terminated in retaliation for his participation

1   with the Somera Charge.  Having engaged in several months of conciliation, it was in the discretion of

2   the EEOC to determine the extent of further conciliation.  The EEOC did not refuse to be flexible with

3   respect to timing; *compare EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256 (11th Cir. 2003) (after

4   3 year investigation, EEOC gave employer 12 business days to respond and refused to grant any

5   extensions); did not refuse to negotiate, *compare EEOC v. Agro Distributors, LLC*, 442 F. Supp. 2d 357

6   (S.D. Miss. 2006) (EEOC's submission of an all-or-nothing proposal evidenced its failure to conciliate

7   in good faith).  The Court should not "examine the details of the offers and counteroffers between the

8   parties, nor impose its notions of what the agreement should provide." *E.E.O.C. v. Pacific Maritime*

9   *Ass'n,* 188 F.R.D. 379, 381 (D. Or. 1999).  The EEOC charge did not change from the time that the

10  EEOC investigated, and began conciliation efforts.  Thus, the issues were available for the CPT to

11  "confront."

12  　　Given the deferential standard of review, the Court finds that the EEOC has satisfied the

13  conditions precedent to filing suit.  The EEOC is charged with remedying discriminatory practices.  The

14  Court may not substitute its judgment by finding "questions of fact" as to whether the conditions were

15  satisfied.  The EEOC properly received a charge of retaliatory conduct.  There is no authority for CPT's

16  proposition that the EEOC was required to investigate the merits of the charge <u>before</u> receiving it.  After

17  the charge was filed, the EEOC performed some investigation of the Mendoza Charge.  The EEOC was

18  not operating in a vacuum with the Charge because the EEOC had investigated the related Somera

19  Charge.  Nonetheless, the EEOC did some investigation and attempted to determine CPT's position on

20  the charge.  The EEOC also provided notice of the reasonable cause determination.  While CPT

21  disagrees reasonable cause existed, the determination is within the discretion of the EEOC and there is

22  no evidence that the determination was either an abuse of the discretion, or "arbitrary and capricious."

23  Finally, the EEOC satisfied conciliation efforts.  It engaged in an eight month conciliation effort, and

24  it was in the discretion of the EEOC to determine the extent of further conciliation.

25  **B.    Affirmative Defenses**

26  　　**1.    The Collateral Estoppel and Waiver defenses**

27  　　The EEOC argues that the third and thirteenth affirmative defenses (for collateral estoppel and

28  waiver), fail because there is no factual support.  The EEOC argues that defendant, in responding to

20

discovery, stated that "it had no supporting facts."  The EEOC argues that because defendant failed to identify any facts supporting these defenses, the defenses should be dismissed.

Defendant CPT's opposition does not address the motion on the affirmative defenses of (1) third affirmative defense for collateral estoppel, and (2) thirteenth affirmative defense for waiver.  (Doc. 25, Opposition p. 11–21.)  The EEOC has shown that CPT lacks evidence to support this affirmative defense.  CPT has not come forward with evidence demonstrating that there is a material issue of fact regarding these two affirmative defenses.  Accordingly, summary adjudication is appropriate.

### 2.   The Exhaustion of Remedies and Unclean Hands Defenses

The EEOC argues that fourth and twelfth affirmative defenses (exhaustion of administrative remedies and unclean hands) fail because they are predicated upon defendant's misunderstanding of the EEOC's obligations to discharge its conditions precedent to suit.  The EEOC argues that these affirmative defenses are based upon defendant's claim that the EEOC failed to adequately investigate and engage in conciliation efforts.

In its opposition, CPT relies upon its arguments as to the inadequate investigation and the factually erroneous Mendoza Charge for its affirmative defenses of exhaustion of remedies and unclean hands defenses.  (Doc. 25, CPT Opposition p. 11.)  CPT argues that the unclean hands doctrine "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with an inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945).  CPT argues that the EEOC disseminated "unfounded and factually unsupportable charges of discrimination."  (Doc. 25, CPT Opposition p. 11.)

The Court agrees with the EEOC's reply brief.  (Doc. 27, Reply p.7.)  CPT's opposition is co-terminous with CPT's position that the EEOC failed to satisfy its conditions precedent.  Since the Court finds as a matter of law the conditions precedent were satisfied under the deferential standard of review, there is no issue of fact as to the failure to exhaust administrative remedies and unclean hands, in the context of this EEOC initiated lawsuit.

### 3.   At-will Employment Affirmative Defense to Title VII

The EEOC argues that the seventh affirmative defense of at-will employment must fail.  The

1  EEOC argues that Labor Code §2922, the at-will employment statute, is not an affirmative defense to

2  a claim of discriminatory conduct.  State law cannot vitiate federal discrimination law.  (Doc. 20, EEOC

3  P&A p. 17.)

4          In federal pleading, an answer must "affirmatively state any avoidance or affirmative defense ..."

5  Fed.R.Civ.P 8(c)(1).  An affirmative defense is an assertion raising new facts and arguments that, if true,

6  will defeat plaintiff's claim, even if all allegations in complaint are true.  *See Saks v. Franklin Covey Co.*,

7  316 F.3d 337, 350 (2nd Cir. 2003); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir.

8  1995) (test is whether potential defense would bar right of recovery "even if the general complaint were

9  more or less admitted to").

10         CPT acknowledges in its opposition that "termination pursuant to the 'at-will' doctrine is not a

11  defense to Title VII discrimination."  (Doc. 25, Opposition p. 12.)  Indeed, an at-will employee may not

12  be terminated in violation of public policy.  *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th

13  Cir.2003) (holding that "at will" employment relationships allow employers to discharge employees for

14  any reason that does not violate public policy).  At-will employment is not a defense to a termination

15  for discriminatory reasons.  Accordingly, the motion will be granted on this affirmative defense.

16                    **4.     Laches Affirmative defense**

17         The EEOC argues that the eighteenth affirmative defense of laches fails as a matter of law.  The

18  EEOC argues it did not unreasonably delay in filing suit and there has not been prejudice to CPT.  EEOC

19  argues that there is no unreasonable or inexcusable delay between the filing of the Charge and the filing

20  of the EEOC complaint - 39 months. The investigation and conciliation efforts continued throughout

21  the period and the company was fully informed of the charges it had to defend.  (Doc. 20, PA& p. 19-

22  20.)  CPT has not been prejudiced by any delay.  The EEOC argues that CPT is aware of all of the

23  witnesses and all of the documents.

24         Laches requires (1) unreasonable and inexcusable delay in filing lawsuit, and (2) the delay caused

25  substantial prejudice to defendant.  *California School Employees Ass'n v. Tustin Unified*, 148

26  Cal.App.4th 510, 521, 55 Cal.Rptr.3d 739 (2007).

27         CPT has not opposed the motion as to the affirmative defense of laches.

28         It took 39 months form the date Mendoza files his discrimination charge to the date that the

EEOC filed suit. This time, nonetheless, does not by itself show inexcusable or unreasonably delay. Consideration must be made of the EEOC workload and resources. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 360 (1977) (nothing in Title VII requires that the EEOC bring an enforcement action within a maximum about of time).  Since there is no evidence of unreasonable and inexcusable delay in filing the lawsuit or that defendant has been prejudiced, summary adjudication on this defense is appropriate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS and DENIES the cross-motions for summary judgment, or in the alternative, summary adjudication as follows:

1. DENIES defendant California Psychiatric Transitions' motion for summary judgment on the claim of retaliation,

2. GRANTS the EEOC's motion on defendant's affirmative defense that it failed to satisfy its conditions precedent to bringing suit,

3. GRANTS the EEOC's motion on Defendant's third affirmative defense for collateral estoppel,

4. GRANTS the EEOC's motion on Defendant's fourth affirmative defense for exhaustion of administrative remedies,

5. GRANTS the EEOC's motion on Defendant's seventh affirmative defense for California Labor Code §2911,

6. GRANTS the EEOC's motion on Defendant's twelfth affirmative defense for unclean hands,

7. GRANTS the EEOC's motion on Defendant's thirteenth affirmative defense for waiver, and

8. GRANTS the EEOC's motion on Defendant's eighteenth affirmative defense for laches. IT IS SO ORDERED.

**Dated:   July 8, 2010**                            _____/s/ Lawrence J. O'Neill_____
                                                    UNITED STATES DISTRICT JUDGE

23